IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

BRANDON KEITH JOHNSON,           §
TDCJ-CID No.2335158,             §
                                 §
        Plaintiff,               §
                                 §
v.                               §        2:24-CV-238-Z-BR
                                 §
WILLIAM H. JONES, *et al*.,      §
                                 §
        Defendants.              §

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS TO DISMISS COMPLAINT**

Before the Court is the Complaint (ECF 3) filed by Plaintiff Brandon Keith Johnson ("Johnson") against numerous Defendants, alleging violations of Johnson's civil rights. Johnson filed this lawsuit *pro se* while a prisoner in the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") and he has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Johnson's Complaint be DISMISSED under 28 U.S.C. §§ 1915 and 1915A for failure to state a claim.

## I. STANDARD OF REVIEW

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of

1

whether the prisoner is proceeding *in forma pauperis*). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs still must plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A.    Factual Background.[1]

Johnson alleges that Defendants committed a variety of civil rights violations against him, including housing him in unconstitutionally cruel conditions and treating him with excessive force, as well as confiscating his personal property, religious material and legal mail. After careful review of Johnson's Complaint and his 369 pages of exhibits, the Court has, in an effort to streamline Johnson's claims, addressed the allegations against each Defendant named in either Johnson's Complaint or his questionnaire responses.[2]

---

[1]These background facts are taken from Johnson's Complaint (ECF 3) and questionnaire responses (ECF 14) and are presumed to be true for screening. Page numbers are those assigned by the Court's ECF system.

[2]The Court notes that some of Johnson's questionnaire responses are convoluted and difficult to decipher. They have been addressed to the best of the Court's understanding and construed in his favor.

**B.**     **Claims Against Daniel V. Pacheco.**

Johnson claims that Defendant Daniel V. Pacheco ("Pacheco") never responded to Johnson's requests for assistance other than to deny his grievances, except on one occasion. (ECF 14 at 3). On that one occasion, Pacheco "be[]littled" and "dehumanized" him, apparently verbally. (*Id.*). Johnson has failed to state a claim against Pacheco.

**1.**     **Written communications to Pacheco.**

The mere fact that Johnson attempted to contact Pacheco does not mean that Pacheco is personally involved in the alleged violations of Johnson's constitutional rights. "[T]housands of grievances, letters, and complaints are written by inmates each month. The directors and administrators of the prison are not liable for each and every incident raised in each and every one of those grievances or letters on the basis that they have 'personal knowledge' of the claims contained therein." *Robinson v. Stephens*, No. 6:14cv701, 2017 WL 4112363 (E.D. Tex. Aug. 9, 2017); *see also Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (given the size of the operation that they oversee, the Director of TDCJ, the Senior Warden of the plaintiff's prison unit and the Director of the Classification Division "cannot be expected to intervene personally in response to every inmate letter they receive."). Johnson's written attempts to contact Pacheco, without more, are insufficient as a matter of law to confer personal liability on Pacheco, and Pacheco is not liable solely in his capacity as a supervisor of the other Defendants. The doctrine of *respondeat superior* does not apply in Section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990).

**2.**     **Verbal harassment.**

The fact that Pacheco allegedly verbally belittled and "dehumanized" Johnson also fails to state a claim under Section 1983. The Fifth Circuit has long recognized that verbal threats or

harassment made by an officer do not constitute a basis for a Section 1983 claim. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983)); *see also Rader v. Lubbock Cty.*, No. Civ. A. 5:01-CV-258-C, 2003 WL 21145788, at *13 (N.D. Tex. Apr. 25, 2003) (quoting *Robertson*, 70 F.3d at 24) (dismissing prisoner's claim that defendant verbally taunted and threatened him because "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations"); *Watson v. Winborn*, No. 02-10984, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (per curiam) ("Verbal threats, name calling, and threatening gestures by [institution officials] do not amount to a constitutional violation."); *Prescott v. Johnson*, No. 18CV577, 2022 WL 672694, at *14 (E.D. Tex. Mar. 7, 2022) (dismissing Section 1983 claim "regarding verbal threats, name calling, and harassment" for failure to state a claim). Accordingly, Johnson fails to state a claim based on Pacheco's alleged verbal abuse, so such allegations should be dismissed.

### 3.     Overruling prescription for sunglasses.

Lastly, Johnson alleges that Pacheco violated his constitutional rights by overruling his medical prescription for sunglasses, which Johnson uses to help protect him from bright lights that cause him to suffer seizures. (ECF 14 at 3). An inmate seeking to establish a constitutional violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation omitted) and requires satisfaction of both an

4

objective and a subjective component. *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only when he (1) knows the inmate faces "a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

Assuming for the purposes of screening that overruling Johnson's medical prescription for sunglasses constitutes a substantial risk of serious harm, Johnson has failed to allege facts indicating that Pacheco knew of the risk to Johnson and disregarded it. Johnson alleges no facts showing that Pacheco knew that Johnson was in substantial danger of harm without his sunglasses, nor does he allege that, despite knowing the risk, Pacheco nevertheless disallowed the prescription. (ECF 14 at 3-4). Johnson has failed to state a claim against Pacheco on any of the grounds asserted, so all claims against Pacheco should be dismissed.

## C.    Claims Against Thomas L. Stevens.

Johnson alleges that Defendant Thomas L. Stevens ("Stevens") "used vulgar language [to] belittle me and degrade me as a human." (ECF 14 at 4). He further alleges that Stevens took his sunglasses away, which caused at least three seizures resulting in a black eye, a broken tooth and "trauma and anguish." (*Id.*). He notes that his sunglasses were later returned in response to a grievance he filed. (*Id.*). Under the authority stated above, Johnson's claim that Stevens verbally abused him fails to state a constitutional violation and, as such, should be dismissed. *See, e.g.*, *Robertson*, 70 F.3d at 24.

5

Nor does Johnson state a claim based on Stevens taking away his medically prescribed sunglasses. Under the authority set out above, and assuming that confiscating Johnson's sunglasses constitutes a substantial risk of serious harm, Johnson has failed to allege facts indicating that Stevens knew of this risk to Johnson and disregarded it. Johnson alleges no facts showing that Stevens knew Johnson was in substantial danger of harm without his sunglasses, nor does he allege that, despite knowing the risk, Stevens nevertheless confiscated the sunglasses. (ECF 14 at 4). Johnson's allegations against Stevens should be dismissed for failure to state a claim.

**D.    Claims Against William T. Miller.**

Johnson next complains that Defendant William T. Miller ("Miller") confiscated his personal property during a shakedown. (ECF 14 at 5). He also appears to allege that Miller violated his constitutional rights by finding him guilty during a disciplinary hearing. (*Id*. at 4).

**1.    Disciplinary Conviction.**

Johnson alleges that Miller found him guilty in a disciplinary hearing of an unspecified violation. (ECF 14 at 4). As a result, Johnson spent 12 days in an air-conditioned disciplinary segregation cell, where he was wearing only boxers and was given no blanket, sheets, mattress, toothpaste or toilet paper. (*Id*.). He further alleges that his food was thrown on the floor multiple times, and he was forced to eat with his hands and wipe with his hands. (*Id*.).

To the extent that Johnson seeks to assert a constitutional violation based upon a false disciplinary case, Johnson fails to state a claim. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A claim that a disciplinary charge is false, by itself, does not state a claim upon which relief may be granted. *See Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012). Johnson's temporary loss of privileges and disciplinary

segregation did not create a liberty interest, and did not implicate due process in the disciplinary hearing. *Lasater v. Herrera*, 729 F. App'x 362, 362-63 (5th Cir. 2018) (allegation of a false disciplinary report failed to state a claim, and due process was not implicated where plaintiff lost prison privileges); *Allums v. Phillips*, 444 F. App'x 840, 841 (5th Cir. 2011) (per curiam) ("Placement in administrative segregation or a change in custodial classification as a result of a disciplinary infraction, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest, and, therefore, there is no right to due process."). Johnson's claims arising from the allegedly false disciplinary case should be dismissed.

### 2.    Conditions of Confinement.

To the extent that Johnson seeks to assert a claim based on the conditions of confinement while in disciplinary segregation, Johnson also fails to state a claim against Miller. To be found liable for denying humane conditions of confinement, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Two requirements must be met in order to allege a constitutional violation related to the conditions of confinement: (1) the condition must objectively be "so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need," and (2) the court must subjectively determine whether prison officials were "deliberately indifferent to inmate health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal citations and quotation marks omitted).

Johnson contends that, while housed in segregation for 12 days with no clothes, blanket or mattress, he was subjected to cold air-conditioning in violation of the Eighth Amendment. (ECF 14 at 4). The Fifth Circuit has recognized that prisoners have a right to protection from extreme temperatures that can adversely impact their health and safety. *See Ball v. LeBlanc*, 792 F.3d 584,

592 (5th Cir. 2015) (finding Eighth Amendment violation for subjecting prisoners to temperatures of extreme heat); *Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir. 1988) (holding that a prisoner's allegations of exposure to the elements during winter months stated a cause of action under the Eighth Amendment). Prison cell temperatures that are "merely uncomfortable," however, "do[] not reflect 'a basic human need that the prison has failed to meet' and is not constitutionally suspect." *Ball*, 792 F.3d at 592 (quoting *Woods*, 51 F.3d at 581). There is no static test to determine whether conditions of confinement are cruel and unusual, but punishment rises to the level of a constitutional violation if the conditions are "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities.'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Woods*, 51 F.3d at 581). The plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *Alexander*, 351 F.3d at 630-31.

The conditions alleged by Johnson of cold air-conditioned air and no clothes or blankets for 12 days, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. *See Johnson v. Thaler*, 202 F.3d 265, 1999 WL 1131941 *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiff's "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"). Johnson also fails to identify a specific injury he sustained as a result of the cold air-conditioned air beyond general discomfort. *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 2008 WL 2337324, at *2 (5th Cir. 2008) (vague allegations of exposure to either cold or heat in a prison environment fail to state a violation of the Eighth Amendment absent any claim that he suffered from severe temperature-related injuries).

8

Even if Johnson had alleged some physical harm beyond *de minimis* inconvenience, his claims would still be subject to dismissal because he has not sufficiently alleged that Miller was deliberately indifferent to his plight. There are no allegations that Miller knew of the conditions of Johnson's cell, or that Johnson personally complained to Miller about the temperature, or about any injuries he may have sustained from those conditions. (*Id.*). Johnson makes no specific factual allegations that Miller was subjectively aware of a substantial risk of serious harm to him and failed to protect him from that harm. *Farmer*, 511 U.S. at 839-40. The "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *id.* at 838). Accordingly, Johnson's Eighth Amendment claims regarding the cold air in the segregation cell lack an arguable basis in law or fact and should be dismissed.

Johnson's claims about unhygienic conditions also fail. The Constitution "forbids deprivation of the basic elements of hygiene." *Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983). "Prison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation." *Sanford v. Brookshire*, 879 F. Supp. 691, 693 (W.D. Tex. 1994). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)). Minor restrictions to hygiene or sanitation, although admittedly unpleasant, do not amount to a constitutional violation. *Johnson*, 281 F. App'x at 322. Again, Johnson fails to allege that Miller was aware of the conditions of the cell, that he suffered an injury due to the conditions of the cell, or that Miller was deliberately indifferent to a substantial risk of serious harm. As a result, all claims against Miller should be dismissed.

2.    **Confiscation of Personal Property.**

Johnson alleges that Miller improperly confiscated his personal property, apparently while Johnson was in disciplinary segregation. (ECF 14 at 12). "Prisoners have a cognizable constitutionally protected property interest in their personal property." *Weeks v. Collier*, No. 22-10126, 2023 WL 7703823 at *5 (5th Cir. Nov. 15, 2023) (citing *Eubanks v. McCotter*, 802 F.2d 790, 793-94 (5th Cir. 1986)). Nevertheless, under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate post[-]deprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted). The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims such as conversion or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.--Corpus Christi 2002).

Therefore, the initial question is whether Johnson has alleged that Miller confiscated the personal property pursuant to a state policy or as "random, unauthorized conduct". The U.S. Supreme Court has noted that "[c]onduct is not 'random and unauthorized' … if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of." *Zinerman v. Burch*, 494 US. 113, 138 (1990) (quoted in *Allen*, 388 F.3d at 149 (5th Cir. 2004)). Johnson alleges that Miller acted illegally, rather than in accordance with a state policy, in confiscating his property. (ECF 14 at 5). Because Johnson alleges that Miller's conduct was unauthorized and not pursuant to prison policy, the *Parratt/Hudson* doctrine applies.

Although Johnson does have a protected property interest in his personal property, "[a] prison official's failure to follow the prison's own policies, procedures or regulations does not

constitute a violation of due process, if constitutional *minima* are nevertheless met." *Brewster*, 587 F.3d at 768 (quotation marks and citations omitted). In *Brewster*, the Fifth Circuit Court of Appeals held that a due process claim was properly dismissed because Texas law provides the adequate post-deprivation remedy of conversion when property is taken without proper procedures. *Id.* Johnson does not allege that his personal property was taken pursuant to anything other than "random, unauthorized conduct" by Miller. Because Johnson has an adequate post-deprivation remedy under Texas law in that he has the right to sue for conversion in state court, he does not have a viable Section 1983 due process claim, and such claim should be dismissed.

## E.    Claims Against Jesus A. Jimenez.

Johnson next alleges that Defendant Jesus A. Jimenez ("Jimenez") picked Johnson up off of his knees while he was handcuffed, slammed his face into a wall and dragged him, leaving a four- to five-foot blood trail across the wall. (ECF 14 at 6).[3] Jimenez then allegedly placed Johnson into a holding cell, where he removed Johnson's clothing, and refused him his seizure medication. (*Id.*). Lastly, he alleges that "all officers involved" refused him medical assistance and any opportunity to use the restroom, eventually causing him to stand barefoot in urine for several hours before being moved to a new cell. (*Id.*).

### 1.    Excessive Force.

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, which includes actions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). Not all force rises to the level

---

[3]Johnson also appears to allege that his personal property was stolen under Jimenez's authority. (ECF 14 at 5). However, under the *Parratt/Hudson* doctrine set out above, Johnson fails to allege a constitutional violation against Jimenez for the loss of his personal property because he alleges that Jimenez acted contrary to TDCJ policy.

11

of an Eighth Amendment claim. Specifically, Eighth Amendment protections do not extend to *de minimis* uses of physical force that are not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To determine whether a prison official violated an inmate's rights by using excessive force, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6-7. Courts must "focus on the prison official's 'subjective intent' and determine it 'by reference to the well-known *Hudson* factors.'" *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016)). Those factors are "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response." *Id*. (quoting *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)).

Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314. While Johnson does not specify the injury he received, the treatment he received for it indicates that the injury was *de minimis*.

In his questionnaire response, Johnson states that he needed only a butterfly bandage over his eye to treat the injury. (ECF 14 at 18). Cuts and abrasions, without more, are *de minimis* injuries that do not support a claim of excessive force. *See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (recognizing that abrasions, bruises, bloody urine, and high blood pressure and heart rate

are *de minimis* injuries insufficient to support an excessive force claim); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis* injuries). Further, he fails to allege facts from which the Court can determine whether there was a need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by Jimenez, and any efforts made by Jimenez to temper the severity of a forceful response. Johnson has failed to state a claim for excessive force.[4]

### 2.    Conditions of Confinement.

Johnson alleges that Jimenez left him in a holding cell, took his clothing and refused to provide him medical care. He further alleges that "all officers involved including Ms. Miller" refused him an opportunity to use the restroom, resulting in Johnson having to stand barefoot in urine for several hours. (ECF 14 at 6).

Johnson has not sufficiently alleged that Jimenez was deliberately indifferent to the conditions of his confinement. There are no allegations that Johnson personally complained to Jimenez about his need to urinate, or about any injuries he may have sustained from the lack of toilet. (*Id.*). Johnson makes no specific factual allegations that Jimenez was subjectively aware of a substantial risk of serious harm to him and failed to protect him from that harm. *Farmer*, 511 U.S. at 839-40. Accordingly, Johnson's Eighth Amendment claims regarding the conditions of his confinement—which lasted only "several hours"--lack an arguable basis in law or fact and should be dismissed.

---

[4]While he states that he was refused medical care after the use of force, he also shows that he received the butterfly bandage on the same date, which negates his conclusory assertion. (ECF 14 at 6, 18).

F.      **Claims Against William Jones.**

Johnson appears to sue Jones as (1) a supervisor at the Clements Unit; (2) as an officer who responded to one or more grievances filed by Johnson; and (3) as a direct participant in the creating unconstitutional conditions of confinement. Each claim will be addressed in turn.

1.      **Supervisory liability.**

Although Johnson claims to not be suing Jones based upon his capacity as a supervisor, he clearly attempts to state such a claim, alleging that Jones "as supervisor being made aware he could've stop[ped] the torture". (ECF 14 at 2). He further alleges that, "as ranking supervisor, his sole responsibility is [to] see [that policy is] used correctly and [to] correct actions of officer[s] under his command." (*Id*.). However, it is well established that supervisory officials are not liable for the acts of their subordinates unless they: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (*citing Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under Section 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Id*. at 304 (quotations omitted).

In order to establish a claim for a deficient policy that caused the violation of a constitutional right under Section 1983, a plaintiff must identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a

14

deprivation of his constitutional rights. *Monell*, 435 U.S. at 694-95. Johnson has not alleged facts that satisfy this standard. Johnson complains only that Jones did not enforce compliance with relevant policies, not that a policy created by Jones was the cause of the alleged violation of his constitutional rights. Johnson has failed to establish that Jones is liable in his supervisory role for a constitutionally deficient policy that created a violation of Johnson's constitutional rights.

2.    **Claims related to Johnson's grievances.**

Johnson alleges that Jones' grievance responses stating that "no further action warranted" and a stamped signature, along with a failure to address the grievances to Johnson's satisfaction, show obvious bias against Johnson. (ECF 14 at 1-2). Johnson also alleges that Jones was "made aware" that Johnson had no proper blankets, mattress or sheets, yet did not aid him. (*Id*. at 1).

Johnson has failed to state a plausible claim because, simply put, there is no constitutionally protected right to a prison grievance system. *See Schwarzer v. Wainright*, 810 F. App'x 358, 360 (5th Cir. 2020) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding that prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction); *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020) (affirming trial court's dismissal of inmate's claim that his grievances were mishandled or improperly denied, as prisoners have no due process rights in the inmate grievance process); *Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to [a] grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation."). Johnson's claims regarding allegedly improper grievance responses, by Jones or others, state no constitutional violation. *See Geiger*, 404 F.3d at 374-75 ("Insofar as [the inmate] seeks relief regarding an alleged violation of his due process rights resulting from the prison

grievance procedures, the district court did not err in dismissing his claim as frivolous."). Johnson's claims against Jones based on Jones' grievance responses should be dismissed.

### 3.    Conditions of confinement.

Johnson next alleges that he was placed in a cell with "septic waste" on the floor for five days. (ECF 14 at 2). Johnson further alleges that Jones moved him from the cell after Johnson complained, "to intentionally restrict my access [to] medical" and that Jones personally refused to provide him with more than one blanket. (ECF 14 at 1). Johnson fails to state a claim against Jones in that he does not allege that Jones was the officer who placed in him in the cell with septic waste or that Jones even had personal knowledge that the cell had septic waste in it. Johnson further fails to allege facts showing that Jones was deliberately indifferent to the conditions of Johnson's confinement, under the standard set forth above.

Johnson also fails to allege any facts whatsoever to support his one-sentence claim that Jones moved Johnson to a different cell in order to restrict his access to medical care. As previously stated, the Court does not credit conclusory allegations such as this. *Chhim*, 836 F.3d at 469. Johnson has failed to plead factual allegations as to this issue that raise the right to relief above a speculative level. *Taylor,* 296 F.3d at 378. Accordingly, such claim should be dismissed.

Johnson's claim that that Jones personally refused to provide him a blanket on three occasions also is fatally conclusory. To be found liable for denying humane conditions of confinement, a prison official must know about and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Johnson alleges no facts showing that Jones knew of an "excessive risk" to Johnson's health or safety by refusing his request for a blanket. He further fails to show that Jones' refusal to provide him a blanket exposed him to an excessive risk of serious harm, nor does Johnson allege facts showing that he actually suffered some harm that was more

16

than *de minimis*. *Alexander*, 351 F.3d at 630-31. In fact, Johnson alleges no effect on him related to the failure to provide a blanket. Johnson's claims against Jones based on his alleged personal involvement in constitutional violations should be dismissed.

**G.    Claims Against Unknown Defendants.**

Johnson alleges that various unnamed defendants "refused assistance [to a] medically dependent human" and allowed "the deprivation of needed resources.' (ECF 3 at 4). In its Briefing Order questionnaire, the Court asked Johnson to provide further detail, including the names of the defendants he wishes to sue in connection with such claims. Each such claim is addressed herein.

**1.    Deprivation of Religious Items.**

Johnson first alleges that Defendants Jimenez, Miller and unnamed other defendants confiscated his religious reading material. (ECF 14 at 6-7). His allegations, liberally construed, could allege a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, and/or the Equal Protection Clause.

**a.    The RLUIPA Claim.**

RLUIPA provides, in relevant part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> > (A) is in furtherance of a compelling governmental interest; and
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

RLUIPA, however, does not provide a cause of action for individual capacity claims. *Jones*

*v. Alfred*, 353 F. App'x 949, 951 (5th Cir. 2009); *Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012) (unpublished) (explaining that "RLUIPA does not create a private right of action against individuals for damages"). Therefore, any RLUIPA claim against any defendant, named or unnamed, in his or her individual capacity, does not state a claim. However, the question remains as to whether he has stated a claim against any defendant in their official capacity.

Under RLUIPA, the plaintiff has the initial burden to show that the challenged law, regulation, or practice substantially burdens the exercise of his religion. *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004) ("Initially, it falls to the plaintiff to demonstrate that the government practice complained of imposes a substantial burden on his religious exercise."). While the statute does not define "substantial burden," the Fifth Circuit defined the term as follows:

> [A] government action or regulation creates a "substantial burden" on religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.... [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following is religious beliefs.

*Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 613 (5th Cir. 2008) (citing *Adkins*, 393 F.3d at 570). Johnson's claim fails at the outset because he has not alleged that a defendant's actions created a "substantial burden" on his religious exercise. *See Wilkinson v. GEO Group, Inc.*, 617 F. App'x 915 (11th Cir. 2015) (confiscation of a religious artifact was not a "substantial burden" on plaintiff's religious practice and was, at worst, a temporary impediment). Johnson alleges that he felt "less than human" and "belittled by God" (ECF 14 at 7), but does not allege that such confiscation created a "substantial burden," *i.e.*, he does not allege that he was pressured "to significantly modify his religious behavior and significantly violate his religious beliefs" as a result. *Id.* He also fails to allege that he was unable to otherwise practice his religion, so his

RLUIPA claim should be dismissed.

In addition, RLUIPA creates a private right of action solely for injunctive and declaratory relief, which Johnson does not seek. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub. nom., Sossamon v. Texas*, 563 U.S. 277 (2011). The Fifth Circuit has made clear that monetary damages are not available for claims against state officials under RLUIPA. *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011) ("RLUIPA does not create a cause of action for damages against [the defendants] in their official capacities…") (quotation omitted). Because Johnson seeks only compensatory damages, his RLUIPA claim should be dismissed on this basis as well.

### b.    Free Exercise Clause Claim.

The First Amendment to the U.S. Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. CONST., AMEND. I. The U.S. Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited when the prison officials establish there is a legitimate penological objective to the limitation. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In order to balance federal constitutional guarantees with the legitimate concerns of prison

officials, a court must determine: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest; (2) whether alternative means of exercising the constitutional right are available; (3) what effect accommodating the exercise of the right would have on the prison system and resources; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Turner*, 482 U.S. at 89-91. "The inmate has the burden of demonstrating that there is no rational relation to a legitimate penological interest." *Keys v. Torres*, 737 F. App'x 717, 719 (5th Cir. 2018) (per curiam). Where a regulation restricts First Amendment rights in a neutral fashion, it is likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 F. App'x 923, 932-32 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)).

Johnson's pleadings are silent about any prison policy or regulation relating to shakedowns that was not applied neutrally and, thus, improperly impinged on his First Amendment right to free exercise of his religious beliefs. *See Mayfield*, 529 F.3d at 609-610. Based on the forgoing, the Court concludes that Johnson's allegations concerning the confiscation of his religious reading material lack any arguable basis under the Free Exercise Clause of the First Amendment and should be dismissed.

### c.    Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted). Thus, to establish an equal protection claim, a plaintiff must first demonstrate "two or more classifications of similarly situated persons were treated differently." *Id*. An equal protection claim

also can be made when a plaintiff, rather than alleging class-based discrimination, alleges he has been singled out as a so-called "class of one." *Id*. (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)) (per curiam). A plaintiff makes a "class of one" claim when he alleges he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment. *Id*. (citing *Olech*, 528 U.S. at 564).

To state an equal protection claim, Johnson "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id*. (quoting *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001)). His equal protection claim fails if he does not allege any facts showing that others are similarly situated. *Id*. (citing *Fennell v. Marion Indep. Sch. Dist*., 804 F.3d 398, 414 (5th Cir. 2015) ("deeming allegations 'insufficient to show disparate treatment where plaintiffs have failed to allege any facts showing that [others were] similarly situated'") (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009)). Johnson does not allege that any defendant provided superior treatment to similarly situated Clements Unit inmates with different religious beliefs. Therefore, Johnson's claims fail under the Equal Protection Clause as well. Johnsons' religious discrimination claims should be dismissed.

### 2.    Bystander Liability Claim.

Johnson alleges that Luis Barahas, Richard Mitchell, Manuel Ramirez and Officer Seymore watched as Jimenez assaulted him, as set forth above. (ECF 14 at 8). However, he fails to state a claim against these defendants.

In the Fifth Circuit, "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley*

*v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). In short, courts must "consider whether an officer 'acquiesce[d] in" the alleged constitutional violation.'" *Id.* at 647. Bystander liability only occurs if the bystander defendant had "reasonable opportunity to intercede and prevent the constitutional violation." *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5–6 (N.D. Tex. Mar. 27, 2015), *R. & R. adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015) (citing *Spencer v. Rau*, 542 F.Supp.2d 583, 594 (W.D. Tex. 2007) (holding that an officer can be held liable under Section 1983 for failure to intervene "if the defendant was present when the force was used, observed the use of excessive force, was in a position where he could realistically prevent the force, and had sufficient time to prevent it")).

The "reasonable opportunity to intercede and prevent the constitutional violation" is "[t]he focus of the bystander-liability inquiry." *Rogers*, 2015 WL 3439145 at *5 (citing *Malone v. City of Fort Worth, Tex.*, No. 4:09-cv-634-Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014); *Terrell v. Castleberry*, Civ. A. No. H-06-2025, 2008 WL 687519, at *5 (S.D. Tex. Mar. 12, 2008) ("A prison guard has a duty to intervene and attempt to end an assault on an inmate. The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.")). Mere presence at the scene of alleged use of excessive force, however, does not give rise to bystander liability. *See Whitley*, 726 F.3d at 646-47; *Vasquez v. Chacon*, No. 3:08-CV-2046-M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell v. Acadian Ambulance Serv.*, 147 F. Supp. 2d 495, 507 (W.D. La. 2001), *aff'd* 390 F. App'x 305, 2010 WL 3023273 (5th Cir. 2010)). This determination involves consideration of both the duration of the alleged use of force and the location of the inmate relative to the bystanders. *See generally Vasquez*, 2009 WL 2169017, at *6.

22

As shown above, the Court has determined that Johnson failed to allege an excessive force claim against Jimenez, which renders his bystander liability claim meritless. However, even assuming that Johnson had alleged an excessive force claim, his bystander liability claim fails. At best, Johnson has alleged only that the defendants were present at the scene of the use of force against him. He does not show that these defendants observed the use of excessive force, were in a position where they could realistically prevent the force, and had sufficient time to prevent it. Accordingly, Johnson's bystander liability claims should be dismissed.

### 3.    Access to Courts.

Johnson next alleges that Dennis Silvertooth ("Silvertooth"), NFN Branson and J. Alexander denied him access to legal materials; however, it is unclear whether Johnson refers to legal materials used in connection with the courts or with prison grievances. (ECF 14 at 9-13). To the extent that Johnson's claims relate to the filing of grievances, he has stated no constitutional violation under the authority cited above and such claim should be dismissed.

Prisoners have a right of access to the courts protected by both the First Amendment right to petition for redress of grievances and the Fourteenth Amendment right to procedural and substantive due process. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986). The right of access to courts requires that inmates be allowed a reasonably adequate opportunity to file non-frivolous cases challenging their convictions and the conditions of their confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). In order to recover for a denial of access to the courts, an inmate must show that an "actionable claim [involving a challenge to a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented ...." *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *see also Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)

(holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, a plaintiff must demonstrate that the lack of access has prevented him from filing, or caused him to lose, a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under Section 1983. *Id*. at 353-54 (quoting *Wolff*, 418 U.S. at 579). As the right of access to the courts is not a "freestanding right," he must demonstrate actual injury resulting from the alleged denial of access. *Id*. at 351. Without a showing of an actual injury, plaintiffs lack standing to pursue claimed denials of access to courts. *Id.* at 349. This requires a plaintiff to allege, at a minimum, that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quotation omitted).

Johnson fails to meet this standard. He does not assert that the failure to provide pens or other materials prevented him from filing a lawsuit. Nor does he state that any pending lawsuits were dismissed as a result of the conduct of which he complains. (ECF 14 at 12, 14). In short, he has not shown that his ability to pursue a "nonfrivolous" or "arguable" legal claim was hindered by any defendant. *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (inmate alleging denial of access to courts must demonstrate actual injury). Johnson has failed to state a plausible claim that he was denied access to the courts. As a result, the claim should be dismissed.

## H.    Leave to Amend.

Ordinarily, "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster*, 587 F.3d 764, 767-68 (5th Cir. 2009). Even so, the Court need not grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Id*. at 768. As

discussed here, Johnson fails to state a plausible claim. Based on the most deferential review of his complaint, it is unlikely that, given the opportunity, he could allege cogent and viable legal claims.  Johnson has stated his best case in his complaint and detailed questionnaire responses. Under these circumstances, the Court concludes that granting leave to amend would be futile and cause needless delay.[5]

### III. RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Johnson's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### IV. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 21, 2025.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28

---

[5]That notwithstanding, the 14-day objection period will permit Johnson the opportunity to proffer factual and/or legal bases, if any, to cure the deficiencies in his claims outlined herein.

U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).

26